UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

CARLOS ELLIS POWELL,

     Defendant.

_____/

Case No. 2:12-cr-20052-1
Civil Case No. 2:18-cv-13107

HONORABLE STEPHEN J. MURPHY, III

## **OMNIBUS ORDER**

Defendant Carlos Ellis Powell and his brother, who was also one of his co-defendants in the case, were leaders in a massive drug distribution and money laundering conspiracy. ECF 749, PgID 11399.[1] On October 17, 2014, the Court sentenced Defendant to concurrent terms of life in prison on each of three counts: (1) conspiracy to distribute marijuana, five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(A)(ii), and 841(b)(1)(D); (2) possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(i); and (3) possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(ii)(II); a consecutive sentence of sixty months' imprisonment for one count of possession of a firearm in furtherance of the possession with intent to distribute a controlled substance, in violation of 18 U.S.C. § 924(c)(1)

_____

[1] All citations are to the criminal docket.

and 924(c)(1)(A)(i); and a concurrent sentence of twenty years in prison for one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(1)(B)(ii), 1956(h), and 21 U.S.C. § 841(b)(1)(A). ECF 469, PgID 4012–13. Shortly thereafter, Defendant timely appealed. ECF 471.

On February 6, 2017, the Sixth Circuit affirmed Defendant's sentence. *See United States v. Powell*, 847 F.3d 760 (6th Cir. 2017). And on October 2, 2017, the Supreme Court denied Defendant a writ of certiorari. *See Powell v. United States*, 138 S. Ct. 143 (2017) (Mem). Defendant timely filed, pro se, the present motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. ECF 728. He then filed a motion to supplement his § 2255 motion and add four additional claims. ECF 743. The Government agreed that the additional claims related back to the original motion and could be added. ECF 755. The Court will therefore grant the motion to supplement and will consider the entirety of the parties' filed briefs, including the portions related to the additional claims, ECF 728, 743, 771, 773.

Defendant also filed five additional motions: a motion for an evidentiary hearing, a motion for discovery and production of documents, a motion to appoint counsel, a motion for partial summary judgment, and a motion for order directing the Government to respond to his discovery requests. ECF 742, 744, 760, 780, 810. The Court reviewed all briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court will deny Defendant's § 2255 motion, deny his motion for appointment of counsel, and deny as moot his remaining motions.

## LEGAL STANDARD

An individual sentenced by a federal court may seek to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. The statute provides four different grounds for claiming relief: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted). Generally, the motion must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citation omitted).

## DISCUSSION

I.   <u>Section 2255 Motion</u>

Defendant sought to challenge his sentence under 28 U.S.C. § 2255 on eight grounds: (1) his Sixth Amendment right to the effective assistance of counsel was violated when his trial counsel failed to adequately cross-examine Agent Donovan; (2) his Sixth Amendment right to the effective assistance of counsel was violated when his trial counsel failed to move to suppress evidence obtained as a result of an unlawful search of his phone data; (3) his Sixth Amendment right to the effective assistance of counsel was violated when his trial counsel failed to object to the use of

a cell site simulator to obtain data; (4) his Fifth Amendment due process rights were violated when the Court imposed a sentence in excess of the maximum authorized by law; (5) his right to self-representation was denied; (6) he is actually innocent of violating 18 U.S.C. § 924(c); (7) he is entitled to a resentencing under *Dean v. United States*, 137 S.Ct. 1170 (2017); and (8) his Fifth and Sixth Amendment rights were violated when the Court used uncharged conduct to convict and sentence him. ECF 728, 743. The Court will address each of Defendant's arguments in turn.

### A.    Ineffective Assistance

Defendant's first three grounds for relief are based on allegations of ineffective assistance of counsel. To succeed on any of his ineffective assistance of counsel claims, Defendant must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

### 1.    Failure to Adequately Cross-Examine Agent Donovan

Defendant first argued that his trial counsel was ineffective when he failed to adequately cross-examine Agent Donovan—the head DEA agent on the case—about the investigation that led to the charges against him. ECF 728, PgID 11195. Specifically, Defendant wanted his counsel to cross-examine Agent Donovan about when the investigation began and when the United States Attorney's Office got involved in it since those facts might support a tactic of moving to disqualify the assigned district judge. *Id.*

4

A judge must recuse himself from a proceeding when "his impartiality might reasonably be questioned" or when "he has served in governmental employment and in such capacity participated as counsel . . . [on] the particular case in controversy." 28 U.S.C. § 455(a), 455(b)(3). When the judge formerly served as a United States Attorney, he is considered "of counsel" for all criminal cases within his district during his tenure. *United States v. Amerine*, 411 F.2d 1130, 1133 (6th Cir. 1969) (citations omitted). Disqualification is only required if the judge served as the United States Attorney during the time that the investigation of the specific case at issue began. *Jenkins v. Bordenkircher*, 611 F.2d 162, 165 (6th Cir. 1979) (citing *Amerine*, 411 F.2d).

Here, the undersigned served as the United States Attorney for the Eastern District of Michigan from March 8, 2005, until August 18, 2008. As soon as the case was filed, the Court confirmed it had no prior knowledge of the case. And the United States Attorney's Office confirmed that the investigation against Defendant was not ongoing during the undersigned's tenure there. Internal documents from the United States Attorney's Office established that the investigation was not opened until March 16, 2010—almost two years after the undersigned's service ended. *See* ECF 771-1. The undersigned therefore had no reason to recuse himself from the case even if Defendant's counsel had raised the issue through the cross-examination of Agent Donovan.

Defendant further argued that the testimony of Agent Donovan could have indicated that the investigation began earlier than August 2008. But Defendant

failed to point to any evidence to substantiate that speculation. "Disqualification is not required on the basis of 'remote, contingent, indirect or speculative interests.'" *United States v. Thompson*, 76 F.3d 442, 451 (2d Cir. 1996) (citing *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)). Because the case was not opened with the United States Attorney's Office until 2010 and the undersigned had no knowledge of the case, Defendant's proposed tactic would have failed. The Court will therefore deny that ground of Defendant's § 2255 motion.

> 2.  *Failure to Move to Suppress All Evidence Obtained Unlawfully through Real Time Cell Site Location Information*

Defendant next argued that his counsel failed to move to suppress evidence that resulted from warrants to obtain cell site location information on his phones. ECF 728, PgID 11203. But his counsel did move to suppress the evidence. ECF 74, 202. On collateral review, Defendant now seemed to argue that his counsel should have also further expanded on the argument that the search warrants to obtain cell site location information used to locate his phones violated the Communications Assistance for Law Enforcement Act ("CALEA"), 47 U.S.C. §§ 1001–1010. ECF 728, PgID 11203.

CALEA provides that "with regard to information acquired *solely* pursuant to the authority for pen registers and trap and trace devices . . . call-identifying information shall not include any information that may disclose the physical location of the subscriber." 47 U.S.C. § 1002(a)(2)(B) (emphasis added). As cell site location data would disclose the physical location of a subscriber, CALEA clearly prohibits the

Government from obtaining it solely on the authority of the Pen/Trap statute. *See In re Application of U.S. for Order*, 497 F. Supp. 2d 301, 307 (D.P.R. 2007)).

While the CALEA bars the Government from obtaining authorization to obtain cell site data by merely showing that its "use is relevant to an ongoing criminal investigation," it did not explicitly establish a standard for obtaining such data. *United States v. Cooper*, No. 13-cr-00693, 2015 WL 881578, at \*3 (N.D. Cal. Mar. 2, 2015). And in the absence of congressional intent to the contrary, Federal Rule of Criminal Procedure 41 "provid[es] a default mode of analysis that governs any matter in which the government seeks judicial authorization to engage in certain investigative activities." *In re Application of the U.S. for an Order (1) Authorizing the Use of a Pen Register & a Trap & Trace Device*, 396 F. Supp. 2d 294, 322 (E.D.N.Y. 2005). Under Rule 41, the Government must make a showing of "probable cause."

Here, the Government made the requisite probable cause showing when it obtained the Rule 41 search warrants for the cell site location information. *See* ECF 202, PgID 1595. Defendant even acknowledged that the Government first obtained the search warrants before procuring the cell site information. ECF 728, PgID 11203. Instead, Defendant argued in his 2255 motion that CALEA prohibits the Government from acquiring cell site location information by any method, including via a warrant. *Id.* at 11213. But he failed to cite any legal authority for the proposition. And case law suggests the opposite—cell site location information may be lawfully obtained through a warrant. *See, e.g.*, *United States v. Espudo*, 954 F. Supp. 2d 1029, 1035, 1043 (S.D. Cal. 2013) (collecting cases). The Court found and the Sixth Circuit

affirmed that the Government lawfully obtained, through a probable cause warrant, the cell site location information. ECF 202, 643. A motion to suppress evidence stemming from the location information was rightfully denied. The Court will therefore deny Defendant's claim.

### 3. Failure to Object to the Use of a Cell Site Simulator to Obtain Unlisted Data

Defendant's last ineffective assistance claim was that his counsel failed to object on Fourth Amendment grounds to the use of a cell site simulator to obtain data. ECF 728, PgID 11224. Specifically, Defendant claimed that his counsel should have argued that using a cell site simulator required a warrant. *Id.* at 11231. But his attorney did object to the use of a cell site simulator. *See* ECF 167, PgID 1273. Regardless, the claim fails.

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[A] Fourth Amendment search occurs when the [G]overnment violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). In deciding whether a particular expectation of privacy is "reasonable," the Court aims to "assure[] preservation of that degree of privacy against [G]overnment that existed when the Fourth Amendment was adopted." *Id.* at 34. Barring a few narrow exceptions, "warrantless searches 'are per se unreasonable under the Fourth Amendment.'" *City of Ontario v. Quon*, 560 U.S. 746, 760 (2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

A cell site simulator is a device that locates cell phones by mimicking the service provider's cell tower and forcing cell phones to transmit "pings" to the simulator. The use of a cell site simulator to track or locate a person likely constitutes a "search" and requires a warrant. *See Jones v. United States*, 168 A.3d 703, 711–13 (D.C. 2017). But if the simulator is used merely to obtain cell phone numbers, the same Fourth Amendment concerns do not prevail. A person has no expectation of privacy over his cell phone numbers, even those that are unlisted. *See Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (plaintiffs "lack[ed] a Fourth Amendment privacy interest in their subscriber information because they communicated it to the systems operators."); *United States v. Ahumada–Avalos*, 875 F.2d 681, 683 (9th Cir. 1989) (there is no legitimate expectation of privacy in unlisted telephone number).

Here, the cell site simulator was not used to locate or track Defendant. Rather, as he admitted, the DEA agents already had made successful physical surveillance of Defendant and his brother before they used the cell site simulator. ECF 728, PgID 11224. The cell site simulator was therefore used only to obtain the numbers of the various phones that Defendant used and not to verify his location. *Id.* And because Defendant had no expectation of privacy in his phone numbers, there was no Fourth Amendment violation.

Even if the use of a cell site simulator was a search that required a warrant, the good faith exception to the exclusionary rule would have applied to it. The exclusionary rule does not apply "when an officer acting with objective good-faith has obtained a search warrant from a judge or magistrate and acted within its scope."

*United States v. Leon*, 468 U.S. 897, 920 (1984). And it does not apply when an officer "act[ed] in objectively reasonable reliance upon a statute" even if "the statute is ultimately found to violate the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 342 (1987).

Here, prior to employing the cell site simulator, the DEA agents submitted a sworn application and obtained a pen register order from Judge Arthur J. Tarnow. Although the order was not labeled as a search warrant, the agents' good faith reliance on the order and the statutory authority that Judge Tarnow invoked in issuing the order constituted a permissible exception to the exclusionary rule. *See United States v. Ellis*, 270 F. Supp. 3d 1134, 1153–57 (N.D. Cal. 2017) (applying the *Leon* good faith analysis in denying a motion to suppress evidence obtained pursuant to a cell site simulator used pursuant to a pen register order and not a warrant). The Court will therefore deny this ground of Defendant's § 2255 motion.

### B.   *Fifth Amendment Due Process*

Defendant next argued that his convictions on the drug offenses violated his Fifth Amendment due process rights because the indictment failed to mention, and the jury did not make findings about, the drug type and quantity. ECF 728, PgID 11236–38. But Defendant did not raise the claim on appeal. *See generally Powell*, 847 F.3d 760. And "claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted). To show cause and prejudice, Defendant must "prove (1) that he possessed good cause for failing to [raise the claim on direct

10

appeal] and would suffer actual prejudice if his averments are deemed precluded, or (2) that he is actually innocent of the subject offense." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

Defendant failed to make either showing. And moreover, his claim lacks merit. The drug offenses were listed in the indictment along with the drug type and quantity threshold required for each offense. *See* ECF 171. And the jury made a finding on the particular drug type and quantity for each offense. *See* ECF 337. The Court will therefore deny this ground of Defendant's § 2255 motion.

### C.    Right to Self-Representation

Defendant argued that he was denied his right to self-representation. ECF 743, PgID 11339. On March 26, 2014, at the final pretrial conference, Defendant, through counsel, indicated that he was interested in representing himself at trial. *See* ECF 286, PgID 2167. On April 10, 2014, the Court held a hearing on the issue and, after a lengthy colloquy, denied his request to represent himself. *See id.* The Court reiterated its position when it denied a motion for reconsideration on the issue. *Id.* at 2167–72. And the Sixth Circuit affirmed the Court's denial of Defendant's request for self-representation. *Powell*, 847 F.3d at 774.

"It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law." *Giraldo v. United States*, No. 94-2460, 1995 WL 290354, at *2 (6th Cir. May 11, 1995) (citation omitted). Defendant did not raise any new arguments that were not raised, considered, and

rejected on appeal. And there have been no intervening changes in the law or other exceptional circumstances to warrant re-litigation of the issue. As the Court and the Sixth Circuit already found, Defendant's "assertion of the right to self-representation 'was not made in good faith but was intended as a tactic to delay trial.'" *Powell*, 847 F.3d at 776 (quoting ECF 286, PgID 2170–71). The Court's denial of Defendant's request to represent himself at trial did not constitute a structural error. The Court will therefore deny Defendant's self-representation claim.

### D.   *Actual Innocence on Possession of a Firearm Count*

Defendant next argued that he is actually innocent of the possession of a firearm count. ECF 743, PgID 11344. He also raised two sub-claims: that his offense level should not have been increased pursuant to U.S.S.G. § 2D1.1(b)(1) and that the Supreme Court's decisions in *Johnson v. United States*, 135 S.Ct. 2551, 2563 (2015) and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) invalidate his § 924(c) conviction. *Id.* at 11348–49. But Defendant did not raise any of those issues on direct appeal. *See generally Powell*, 847 F.3d 760. And he failed to show good cause and prejudice or prove his actual innocence to overcome the procedural default on the claim or subclaims. *See Fair*, 157 F.3d at 430 (citing *Bousley*, 523 U.S. at 621).

As to his actual innocence claim, Defendant argued that he "was miles away when the firearm was discovered" and that he never used a firearm in furtherance of a drug trafficking offense. ECF 743, PgID 11345. To show actual innocence, Defendant must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *See Bousley*, 523 U.S. at 621

(internal quotations and citation omitted). As such, "actual innocence" means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). And "actual innocence" is an extremely narrow exception that is "rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

18 U.S.C. § 924(c) makes it unlawful for a person to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime" or to possess a firearm "*in furtherance of any such crime*." (emphasis added). When interpreting the "in furtherance of" language, several factors are considered: whether the firearm was strategically located for quick and easy use, "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (citation omitted); *see also United States v. Brown*, 732 F.3d 569, 576 (6th Cir. 2013) (courts consider a "non-exclusive list of six factors to help distinguish possession in furtherance of a crime from 'innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.'" (quoting *Mackey*, 265 F.3d at 462)).

Here, Defendant failed to present any factual claim of innocence or point to any evidence that would make it "more likely than not that no reasonable juror would have convicted him." *See Bousley*, 523 U.S. at 621. Rather, he cited various cases pertaining to the meaning of "in furtherance." Those provisions all fell far below the burden he had to meet. At trial, the Government presented an abundance of evidence that multiple guns were found in the basement of one of Defendant's homes—a fact

that he even conceded. ECF 743, PgID 11344–45; ECF 316, PgID 2557. And contrary to Defendant's unsupported assertions, the guns were loaded, of the type typically used in conjunction with drug trafficking, and found directly next to and on top of substantial amounts of heroin and cash. ECF 496, PgID 5037–46. Based on all the evidence presented, and in light of the *Mackey* factors, a reasonable jury could and did convict Defendant of possession of a firearm in furtherance of a drug trafficking offence. *See United States v. Leary*, 422 F. App'x 502, 512 (6th Cir. 2011) (a violation of § 924(c) can be shown if "there is a large amount of drugs or money present, such that the very existence of these items on the premises may be seen to warrant a gun for protection."). Defendant's actual innocence claim therefore fails.

As to Defendant's offense level, his argument is that the Court miscalculated the offense level under federal sentencing guidelines. Defendant failed to show good cause for why he did not raise the offense level issue on appeal or prejudice from it. And the "actual innocence" exception does not permit Defendant "to raise claims about guidelines calculations in a collateral attack." *Gibbs v. United States*, 655 F.3d 473, 478 (6th Cir. 2011). Moreover, an enhancement pursuant to § 2D1.1(b)(1) was not even applied to Defendant's sentence. *See* ECF 451, PgID 3462.

Finally, as to Defendant's claims under *Johnson* and *Dimaya*, he argued that a conspiracy to commit a crime does not constitute a crime of violence, thereby invalidating his conviction under § 924(c). ECF 743, PgID 11344. When a claim "is so novel that its legal basis is not reasonably available to counsel," it may constitute good cause to excuse a procedural default. *Reed v. Ross*, 468 U.S. 1, 16 (1984). Here,

14

the two Supreme Court cases that supported his position were decided after judgment was entered against Defendant and after he filed his appeal. And when the Supreme Court explicitly overrules its prior precedents and applies a decision retroactively, as it did in *Johnson* and *Dimaya*, "'there will almost certainly have been no reasonable basis upon which an attorney previously could have urged' the newly adopted position." *United States v. Pullia*, Nos. 16-6450, 16-6455, 16-7631, 2017 WL 5171218, at *6 (N.D. Ill. Nov. 8, 2017) (quoting *Reed*, 468 U.S. at 17). Thus, Defendant showed good cause for why the claim that Supreme Court cases invalidated his conviction was procedurally defaulted.

But Defendant cannot show prejudice because he misinterpreted his conviction in light of the holdings in *Johnson* and *Dimaya*. Although a conviction under § 924(c) may be premised on an underlying violent crime, felony, or other residual offense, it may also be premised on a "drug trafficking crime." *See* 18 U.S.C. § 924(c). A "drug trafficking crime" is defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). Here, the predicate crime underlying Defendant's § 924(c) conviction was conspiracy to distribute drugs, in violation of 21 U.S.C. §§ 846 and 841. Those are offenses punishable under the Controlled Substances Act and therefore "drug trafficking crimes" under § 924(c)(2). ECF 171, PgID 1294. The holdings in *Johnson* and *Dimaya*, on the other hand, only apply to § 924 convictions as they relate to underlying violent crimes, violent felonies, or the residual violent crimes clause. The cases are irrelevant

to Defendant's § 924(c) conviction premised on an underlying "drug trafficking crime." The Court will deny this ground of Defendant's § 2255 motion.

> E.   *Resentencing under Dean*

Defendant argued that the Supreme Court's decision in *Dean v. United States*, 137 S.Ct. 1170 (2017) mandates his resentencing to allow the Court to consider the mandatory consecutive five-year sentence required by § 924(c) when a federal court imposes an appropriate sentence for the other underlying counts. ECF 743, PgID 11349. Defendant failed to raise any of the issues on direct appeal. But because *Dean* was decided after judgment was entered against Defendant and after he filed his appeal, and because the Supreme Court explicitly overruled Sixth Circuit precedent in its decision, good cause exists for the procedural default. *See Reed*, 468 U.S. at 16; *Pullia*, 2017 WL 5171218, at *6.

Defendant cannot show prejudice, however, because he failed to show any reason that the Court would resentence him differently in light of the pronouncement of *Dean*. The Court has long enjoyed discretion in the sort of information it may consider when setting an appropriate sentence. *See Pepper v. United States*, 562 U.S. 476, 487–489 (2011). And the holding in *Dean* did not remove or change that discretion. *Dean*, 137 S.Ct. at 1175. Rather, *Dean* stands for the proposition that the Court *may* consider "a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense[s]." *Id.* at 1178. The Court imposed a just sentence, and even in light of *Dean*, any resentencing would not result in a

different or lower sentence. Accordingly, that ground of Defendant's § 2255 motion is denied.

As a subclaim, Defendant further argued that he was unlawfully sentenced above the statutory maximum on the money laundering conviction. ECF 743, PgID 11352. Like his *Dean* claim, Defendant failed to raise the issue on direct appeal. But, even so, the claim lacks merit. The statutory maximum for conspiracy to commit money laundering is 20 years. 18 U.S.C. §§ 1956(a), 1956(h). And Defendant was sentenced to 20 years' imprisonment on the money laundering count. ECF 469, PgID 4013. Defendant argued that the Court did not make explicit the sentence as to each count during Defendant's sentencing hearing. Perhaps so. But in any event, the judgment made explicit that the Defendant was sentenced to 20 years on the money laundering court. *Id.* And while the Sixth Circuit noted that when oral and written sentences conflict, the oral sentence governs, *see Powell*, 847 F.3d at 767 n.3 (citing *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011); *United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008)), the Court will make clear now what is evident from all the circumstances: that Defendant's sentence as to the money laundering charge was 20 years' imprisonment. Because he was not sentenced above the statutory maximum, his claim fails.

Further, even if the money laundering sentence was erroneous, Defendant cannot show prejudice to overcome his procedural default on the claim. Defendant will be serving a life sentence for the three drug charges. Any error on the money laundering sentence would not affect his concurrent sentence.

F.      *Factual Findings under the Sentencing Guidelines Range*

Finally, Defendant made several claims that all boil down to an argument that the Court violated his Fifth and Sixth Amendment rights when it based his sentence on judicially determined facts and conduct. ECF 743, PgID 11353. But, like two of his prior grounds, Defendant failed to raise the judicial-factfinding issue on direct appeal. And he cannot show good cause or prejudice to overcome the procedural default now.

Moreover, his claim lacks merit. Defendant is correct in his assertion that the Supreme Court held the mandatory guideline system unconstitutional. *Id.* at 11354 (citing *United States v. Booker*, 543 U.S. 220, 240–41 (2005)). But the Sixth Circuit has consistently held that the Court, even post-*Booker*, "may still find facts using the preponderance-of-the-evidence standard" without violating the Fifth Amendment. *United States v. White*, 551 F.3d 381, 383 (6th Cir. 2008) (en banc) (collecting cases). And as "long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's [Sixth Amendment] right to a jury trial by looking to other facts . . . when selecting a sentence within that statutory range." *Id.* at 385.

Here, the statutory maximums imposed by the jury's verdict were life imprisonment for the three drug offenses, 21 U.S.C. § 841(b)(1)(A), 20 years' imprisonment for the money laundering offense, 18 U.S.C. § 1956(a)(1), and 5 years' imprisonment for the firearm count, 18 U.S.C. § 924(c)(1)(A). As clarified above, the Court did not impose a sentence that exceeded any of the statutory ceilings. *See* ECF 469. The Court therefore did not violate Defendant's Fifth or Sixth Amendment rights

when it used judicially found facts in determining the advisory guidelines range and in imposing a sentence that fell at or under the statutory maximums. Defendant's judicial-factfinding ground of his § 2255 motion is denied.

## II.    Motion to Appoint Counsel

After filing the § 2255 motion, Defendant filed a motion for appointment of counsel to assist with his representation. ECF 760. Appointment of counsel in a § 2255 proceeding is mandatory only if the Court determines that an evidentiary hearing is required. *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004). "If no evidentiary hearing is necessary, the appointment of counsel . . . remains discretionary." *Id.* Counsel may still be appointed in exceptional cases, like when a defendant "has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim." *Id.* at 788 (citation omitted).

Here, Defendant claimed that the Government conceded that an evidentiary hearing was required to resolve various factual disputes. ECF 760, PgID 11468. But the Government made no such concession. And as evidenced above, no evidentiary hearing is necessary, and there is no exceptional aspect to the case to warrant appointment of counsel. The Court will therefore deny Defendant's motion to appoint counsel.

## III.    Remaining Motions

Finally, Defendant filed various additional motions related to his § 2255 motion: a motion for an evidentiary hearing, a motion for discovery and production of documents, a motion for partial summary judgment, and a motion for order directing

the Government to respond to his discovery requests. ECF 742, 744, 780, 810. Because the Court has resolved the § 2255 motion, Defendant's remaining, pending motions are denied as moot.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to supplement [743] is **GRANTED**. The Court considered the entirety of the parties filed briefs related to the initial and additional claims, ECF 743, 771, 773, in consideration of the present order.

**IT IS FURTHER ORDERED** that Defendant's motion to vacate sentence under 28 U.S.C. § 2255 [728] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion to appoint counsel [760] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for an evidentiary hearing [742] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant's motion for discovery and production of documents [744] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant's motion for partial summary judgment [780] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant's motion for order directing the Government to respond to his discovery requests [810] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **CLOSE** Civil

Case No. 2:18-cv-13107.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 9, 2020

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on July 9, 2020, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager

21